**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| ANOUR BENAHMED, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 12-cv-01974-AW |
| | * | |
| BAE SYSTEMS TECHNOLOGY | * | |
| SOLUTIONS & SERVICES, INC. | * | |
| Defendant. | * | |

\***********************************************************************

<u>**MEMORANDUM OPINION**</u>

Pending before the Court is Defendant BAE Systems Technology Solutions and Services, Inc.'s Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim.  Doc. No. 13.  The Court has reviewed the parties' motion papers and exhibits and concludes that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2011).  For the reasons articulated below, Defendant's Motion will be GRANTED-IN-PART and DENIED-IN-PART.[1]

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The following factual background is drawn from the Complaint unless otherwise noted. Plaintiff Anour Benahmed is a male American citizen of Moroccan national origin.[2]  Plaintiff began his employment with Defendant BAE Systems Technology Solutions and Services, Inc. ("BAE") as a Senior RF Engineer and project lead on September 15, 2008.  Plaintiff served as the technical lead of a government contract issued to BAE, and worked with several white, male

---

[1] The Court will also GRANT Defendant's unopposed Motion for an extension of time to file a reply brief.  Doc. No. 19.

[2] Plaintiff's name was spelled "Anouar" and "Anowar" in the Complaint, which also identified Plaintiff as female. The motion papers indicate, however, that the proper spelling is "Anour" and that Plaintiff is male.

Americans on the project.  Keith Magoon, a white, male American, was one of Plaintiff's supervisors.

Prior to Plaintiff's employment with BAE, the project had been stalled for approximately two years.  The project began moving forward as a result of Plaintiff's efforts and leadership. However, Plaintiff claims that throughout his work on the project, he was undermined by members of the team who communicated unflattering information to upper management and other individuals involved with the project.  Plaintiff alleges that Magoon mocked Plaintiff by imitating his accent and saying that Plaintiff's work would be much better if he had a better command of the English language.  Plaintiff told Magoon not to speak to him in a mocking, derogatory tone, to which Magoon allegedly responded that "he was the f**king manager and that he could say whatever he wanted to say to the Plaintiff."

Plaintiff complained to BAE's HR Department about Magoon's disparaging remarks and claimed that he was the victim of a hostile work environment, but BAE took no action with respect to Plaintiff's complaint.  Within days of Plaintiff's complaint to HR, Magoon became aware that Plaintiff had made a discrimination complaint against him.  Plaintiff's Complaint does not specify when Magoon made the alleged derogatory statements or when Plaintiff lodged his complaint with BAE's HR Department.

At the time of Plaintiff's employment, BAE required supervisors to evaluate their employees' work performance on an annual basis.  As part of this process, BAE mandated that supervisors meet with their employees to discuss the evaluation and allow input.  Magoon was responsible for preparing Plaintiff's work evaluation for the 2009 calendar year.  Magoon submitted the evaluation on or about January 30, 2010 without any input from Plaintiff.  The evaluation indicated that Plaintiff "achieved" expectations, but Plaintiff alleges that it also

contained "false, untrue and derogatory information" and that its contents did not reflect Plaintiff's actual work performance.  Plaintiff asserts that this evaluation was provided in retaliation for Plaintiff's HR complaint about Magoon.

Plaintiff claims that the evaluation caused him to be denied a raise and promotion, led to his placement on a performance improvement plan ("PIP") and led to his eventual termination. On or about January 4, 2010, Plaintiff was removed as project lead and replaced by a white, male team member who allegedly lacked the knowledge, experience, and training to lead the project. Despite Plaintiff's removal from the project leader position, a white, male director of BAE, Bob McArthur, demanded and required that Plaintiff continue to perform the same duties.  The Plaintiff complained that this was unfair.

On February 1, 2010, McArthur recommended all of the team members from Plaintiff's project for the "Chairman's Award," which they ultimately received.  Plaintiff was the only member of the team not to receive McArthur's recommendation.  Plaintiff asked why he was the only team member not to receive the award, but he obtained no answer.  On February 15, 2010, Plaintiff filed a complaint alleging racial discrimination based on the failure to recommend him. BAE officials received Plaintiff's complaint and promised to investigate.

On February 24, 2010, Nadine Gregoire, an African-American female, placed Plaintiff on the PIP.  Gregoire had replaced Magoon, who left BAE.  Plaintiff asserts that his placement on the PIP was in retaliation for his filing of complaints given that Gregoire had no knowledge of his work performance and therefore had no other basis for putting him on the PIP.  Plaintiff alleges that the PIP was based on "false, untrue and derogatory" information and was put in place for the purpose of causing Plaintiff's termination.  BAE told Plaintiff that if he did not attend the PIP meeting he would be terminated.  On February 25, 2010, Plaintiff met with

Gregoire to discuss the PIP and expressed the view that the information in the PIP was false and that his placement on the PIP was discriminatory and retaliatory.  On March 4, 2010 BAE terminated Plaintiff's employment on the grounds of insubordination.  Plaintiff asserts that the grounds were a pretext and that the termination was discriminatory and retaliatory.

On or about June 15, 2010, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  Doc. No. 13-2.  Plaintiff alleged discrimination based on national origin and retaliation, but not race.  *Id.*  In his Charge, Plaintiff stated, "I believe I have been discriminated against because of my national origin (Moroccans, North Africa) . . . and in retaliation for engaging in a protected activity."  *Id.*  He also stated in the Charge that Magoon had made "racial comments" about his accent.  *Id.*

## II.    STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Except in certain specified cases, the complaint need only satisfy Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  In resolving a motion to dismiss, the Court should proceed in two steps.  First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  Second, "[w]hen there are well-pleaded

4

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though he might uncover direct evidence during discovery. *Id.* at 511–12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery "it may be difficult to define the precise formulation of the required prima facie case in a particular

case." *Id*. at 512; *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewicz* is consistent with more recent case law).[3]

In reviewing a motion to dismiss under Rule 12(b)(6), the court may consider the Complaint, matters of public record, and documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  The EEOC Charge attached to Defendant's Motion is integral to the Complaint and Plaintiff has not contested its authenticity.  *See, e.g.*, *Rodriguez v. Cellco P'ship*, No. WDQ-11-3299, 2012 WL 2904809, at *1 n.2 (D. Md. July 13, 2012); *White v. Mortg. Dynamics*, 528 F. Supp. 2d 576, 579 (D. Md. 2007).  Accordingly, the Court will consider the EEOC Charge without converting Defendant's Motion into one for summary judgment.

## III.   ANALYSIS

Plaintiff brings the following causes of action against Defendant BAE: (1) discrimination on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (Count II); (2) discrimination on the basis of race in violation of 42 U.S.C. § 1981 (Count IV); (3) retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a) (Count I); (4) retaliation in violation of 42 U.S.C. § 1981 (Count III); and (5) wrongful and abusive discharge in violation of Maryland law.  The Court will address Plaintiff's discrimination claims, retaliation claims, and state law claims in turn.

### A.     Discrimination Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

---

[3] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, *see Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009), the analysis cited herein remains good law.  *See Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 666 (D. Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination.") (internal quotations omitted) (citations omitted).

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Establishing a prima facie case of race or national origin discrimination under Title VII requires a plaintiff to show that "(1) he is a member of a protected class, (2) he was performing satisfactorily, and (3) he suffered adverse employment action, (4) under circumstances giving rise to an inference of discrimination." *Hatton v. Thomasville Furniture Indus., Inc.*, 2 Fed. App'x 302, 303 (4th Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 802); *see also, e.g.*, *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004) (requiring plaintiff to establish for fourth prong that "similarly-situated employees outside the protected class received more favorable treatment"); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 424 (D. Md. 2006) (same).  Although Plaintiff is not required to plead a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion, he nonetheless retains the burden of alleging facts sufficient to state all the elements of his claim. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003).  Among the elements that Plaintiff must allege to state a claim under Title VII is that he "was terminated or otherwise treated less favorably 'because of' his race [or national origin]." *Luy v. Balt. Police Dept.*, 326 F. Supp. 2d 682, 689 (D. Md. 2004) (citing 42 U.S.C. § 2000e-2(a)).  The framework for analyzing discrimination claims under 42 U.S.C. § 1981 is identical to the Title VII framework.  *See, e.g.*, *White*, 375 F.3d at 295; *Ike-Ezunagu v. Deco, Inc.*, No. RWT-09-cv-526, 2011 WL 1485277, at *4 (D. Md. Apr. 18, 2011).

Plaintiff alleges a single incident in which a coworker mocked and made derogatory comments about him based on his accent.  However, Plaintiff has failed to plead any nexus between this incident and subsequent events.  Plaintiff did not specify in his Complaint when these derogatory comments were made and when he first complained to BAE's HR Department

about his supervisor.[4]  Plaintiff has also failed to specify how his poor performance evaluation was given on account of national origin or race.  Indeed, Plaintiff claims the evaluation contained "false, untrue, and derogatory information," but nothing concerning his race or national origin.  Doc. No. 1 ¶ 18.  Plaintiff implies that this evaluation ultimately led to his demotion and termination, but Plaintiff has failed to plead any factual connection between these events and his national origin or race.  Plaintiff's conclusory assertion that his termination was discriminatory is insufficient to survive a motion to dismiss.

For similar reasons, Plaintiff has failed to adequately plead that he was subjected to a hostile work environment.  A hostile work environment claim requires Plaintiff to establish that he was subjected to conduct that was (1) unwelcome; (2) based on national origin; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere.  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001).  Plaintiff's allegation that he encountered harassment on a single occasion is insufficient to state a claim of a hostile work environment.  *See, e.g.*, *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2004) (granting summary judgment to employer where harassment "occurred only once" and therefore did not "establish sufficiently frequent—i.e., pervasive—hostile treatment").

In sum, Plaintiff has failed to state a plausible claim that he was subjected to discriminatory treatment because of his national origin or race.  However, the Court will grant Plaintiff's requested leave to amend his Complaint.  If Plaintiff fails to do so within ten days of the entry of the accompanying Order, Counts II and IV will be dismissed.

---

[4] The Complaint plainly fails to provide dates as to either of these events.  The EEOC Charge provides dates but appears to contradict the timeline of events presented in the Complaint.  For example, Plaintiff alleges in the Charge that his supervisor made derogatory statements on January 5, 2010, *after* he filed his initial complaint with HR and after he was removed as project lead.  *See* Doc. No. 13-2.

B.      Retaliation Claims

Title VII makes it unlawful for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Protected activity of an employee, therefore, can take the form of opposing any practice made unlawful under Title VII.  To establish a prima facie case for retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) an adverse employment action occurred against him; and (3) there is a causal connection between the protected activity and the employment action. *See Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 343-44 (4th Cir. 2006) (applying the same standard for retaliation claims whether brought under Section 1981 or Title VII).

Plaintiff alleges that after his supervisor made derogatory remarks concerning his national origin and race, Plaintiff complained to BAE's HR Department.  Doc. No. 1 ¶¶ 14, 16. Accordingly, Plaintiff has sufficiently alleged that he engaged in protected activity.  *See, e.g.*, *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) ("The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures.").  Plaintiff has also sufficiently alleged that he suffered adverse employment actions, as he was denied a raise and promotion, was demoted from his position as project lead, and was ultimately terminated by BAE.  Doc. No. 1 ¶¶ 19, 20, 27. Plaintiff has failed, however, to allege a sufficient nexus between his initial complaint and the adverse employment actions.  As discussed above, Plaintiff does not specify in his Complaint when he filed his first complaint with the BAE HR Department and when, in relation to that

complaint, he was denied a raise, denied a promotion, demoted, and terminated.[5]  Plaintiff has therefore failed to sufficiently plead a causal connection between the protected activity and the adverse employment action.  *See, e.g.*, *Pascual v. Lowe's Home Centers, Inc.*, 193 Fed. App'x 229, 233 (4th Cir. 2006) (per curiam) (where only evidence of causal connection is temporal proximity, the time between an employer's knowledge of protected activity and an adverse employment action must be "very close") (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)).

Plaintiff also alleges that he filed complaints regarding his failure to receive the Chairman's Award and his placement on the performance improvement plan (PIP), and that he was terminated as a result of these complaints.  *Id.* ¶¶ 23, 26.  Unlike his initial complaint regarding his supervisor's mistreatment, Plaintiff has failed to show with respect to these later complaints that he engaged in protected activity.  Plaintiff does not specify in his Complaint what was discriminatory about the award process.  He also fails to explain the allegedly discriminatory motive behind the PIP or how the terms of the PIP were discriminatory.  Plaintiff's conclusory assertions that these complaints were based on discriminatory treatment are insufficient to state a claim that he engaged in protected activity.

Therefore, as with his discrimination claims, Plaintiff has failed to plead plausible claims for retaliation, and the Court will grant Plaintiff's requested leave to amend his Complaint.  If Plaintiff fails to do so within ten days of the entry of the accompanying Order, Counts I and III will be dismissed.

---

[5] As discussed, *supra* note 4, Plaintiff provided no dates for these events in his Complaint.  The dates provided in his EEOC Charge contradict the timeline in his Complaint and also appear to undermine his retaliation claims.

C.      Wrongful or Abusive Discharge[6]

A plaintiff can bring a civil action alleging an unlawful employment practice under Maryland's Fair Employment Practices Act (FEPA) provided "the civil action is filed within 2 years after the alleged unlawful employment practice occurred."  MD. CODE, STATE GOV'T § 20-1013(a)(3).  Plaintiff does not allege any unfair employment practices following his termination on March 4, 2010.  Doc. No. 1 ¶ 27.  Plaintiff filed this action on July 2, 2012, more than two years after the latest alleged unlawful employment practice.  To the extent Count V of Plaintiff's Complaint is brought pursuant to FEPA, the action is time-barred.

Plaintiff's claim of wrongful or abusive discharge also fails to the extent it is brought under Maryland common law.  To advance such a claim, Plaintiff would have to demonstrate that his termination falls within one of the narrow public policy exceptions to the doctrine of at-will employment.  *See Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981) ("Maryland does recognize a cause of action for abusive discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy.").  Plaintiff appears to claim that it is the public policy of Maryland to prohibit discrimination and retaliation.  Doc. No. 1 ¶ 42.  However, FEPA provides a statutory remedy for discrimination and retaliation claims, and Maryland courts have repeatedly held that a wrongful discharge claim does not lie where a statutory remedy exists to vindicate the alleged violation of public policy.  *See, e.g.*, *Makovi v. Sherwin Williams Co.*, 561 A.2d 179, 190 (Md. 1989), *see also Jordan*, 458 F.3d at 348–49.

---

[6] Plaintiff's Complaint states: "[The] action and conduct described above constitutes wrongful discharge in violation of Maryland common law.  Plaintiff further alleges that his discharge was without cause and in retaliation for Plaintiff's complaining about discrimination and harassment.  Plaintiff's discharge violated the public policy of the State of Maryland as expressed in [FEPA] prohibiting discrimination and retaliation."  Doc. No. 1 ¶¶ 41–42.  It is unclear whether Plaintiff is (1) alleging that Defendant violated FEPA or that (2) Defendant violated Maryland's common law and that FEPA provides the statutory basis for the alleged common law violation.  The Court will address both possible interpretations of the Complaint.

Finally, even if Plaintiff's FEPA and wrongful discharge claims were not barred, Plaintiff appears to have abandoned these claims as his Opposition contains no arguments with respect to Count V.  Where a Plaintiff fails to address a claim in response to a motion to dismiss, the Court may find that the Plaintiff has abandoned the claim.  *See, e.g.*, *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010); *Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997).

For the foregoing reasons, Plaintiff's claim of wrongful and abusive discharge will be dismissed with prejudice.  The Court will not grant Plaintiff leave to amend with respect to Count V because amendment would be futile.

## IV.     CONCLUSION

For the foregoing reasons, BAE's Motion to Dismiss is GRANTED-IN-PART and DENIED-IN-PART.  A separate Order will follow.


November 6, 2012                          _____/s/_____
         Date                                              Alexander Williams, Jr.
                                                           UNITED STATES DISTRICT JUDGE